UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

CARL KOCH, AS THE OWNER
OF GREAT LAKES II, 1979
BRUNO STILLMAN 25' CRUISER          NO. 8:25-cv-300-WFJ-NHA
BEARING HULL IDENTIFICATION
NO.: BSY003580979, ITS ENGINES,
TACKLE, APPURTENANCES, EQUIPMENT,
ETC.,

     Petitioner.

_____/

## **REPORT AND RECOMMENDATION**

Petitioner filed this admiralty action, seeking exoneration from, or limitation of, liability for an October 10, 2024 incident involving his 1979 Bruno Stillman 35' Cruiser bearing Hull Identification No. BSY003580979 (the "Vessel"). Am. Pet. (Doc. 10). The deadline for filing claims has passed, and the Clerk has entered default against all non-appearing claimants. Doc. 20. Now, the Petitioner moves without opposition for entry of a final default judgment, exonerating him from liability as to all non-appearing claimants. Doc. 25. I respectfully recommend that the District Court grant the motion.

## I.    Legal Context

The Shipowner's Limitation of Liability Act, 46 U.S.C. §§ 30501, et seq., allows a vessel owner to limit—to the value of the vessel or the owner's interest in the vessel—the owner's liability for damage or injury that occurs without the owner's privity or knowledge. 46 U.S.C. § 30529; *Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1325 (11th Cir. 2019). The procedures for seeking exoneration from, or limitation of, liability for damage are governed by both the Limitation of Liability Act and Supplemental Rule F of the Supplemental Rules for certain Admiralty and Maritime claims.

Under Supplemental Rule F(1), "Not later than six months after receipt of a claim in writing, any vessel owner may file a complaint in the appropriate district court . . . for limitation of liability pursuant to statute." Suppl. R. F(1). Supplemental Rule F(1) also requires the vessel owner to deposit with the court "a sum equal to the amount or value of the owner's interest in the vessel and pending freight, or approved security therefor," as well as "security for costs and, if [it] elects to give security, for interest at the rate of 6 percent per annum from the date of the security." *Id.*

Once a vessel owner, that is, the petitioner in a Limitation of Liability Action, complies with Supplemental Rule F(1) by timely filing the complaint and making the deposit with the court, the Limitation of Liability Act and the Supplemental Rules require a court to take two actions. First, the court must

issue a stay in all other claims and proceedings against the owner that are related to the incident involving the vessel at issue in the Limitation of Liability Action. *Offshore of the Palm Beaches, Inc. v. Lynch*, 741 F.3d 1251, 1257 (11th Cir. 2014) (citing 46 U.S.C. § 30511). Second, a court must "issue a notice to all persons asserting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice." Supp. R. F(4). This notice is also known as a monition.

The notice procedures for a monition are as follows:

[T]he court shall issue a notice to all persons asserting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice. The date so fixed shall not be less than 30 days after issuance of the notice. For cause shown, the court may enlarge the time within which claims may be filed. The notice shall be published in such newspaper or newspapers as the court may direct once a week for four successive weeks prior to the date fixed for the filing of claims. The plaintiff not later than the day of second publication shall also mail a copy of the notice to every person known to have made any claim against the vessel or the plaintiff arising out of the voyage or trip on which the claims sought to be limited arose. In cases involving death a copy of such notice shall be mailed to the decedent at the decedent's last known address, and also to any person who shall be known to have made any claim on account of such death.

Supp. Rule F(4).

Once notice has been given, all claims "shall be filed and served on or before the date specified in the notice." Fed. R. Civ. P. Supp. F(5). Furthermore, "[i]f a claimant desires to contest either the right to exoneration from or to limitation of liability, the claimant shall file and serve an answer to the complaint unless the claim has included an answer." *Id.*

Under the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The Federal Rules of Civil Procedure apply to admiralty claims "except to the extent that they are inconsistent with the[ ] Supplemental [Admiralty] Rules." Supp. R. A(2). Federal Rule of Civil Procedure 55 is not inconsistent with the Supplemental Admiralty Rules governing limitation of liability actions. Rather, consistent with Rule 55, Supplemental Rule F(4) requires notice to all persons asserting claims against the petitioner (each "a party against whom a judgment for affirmative relief is sought") and Supplemental Rule F(5) contemplates a noticed deadline on which they must appear to make a claim. Accordingly, Rule 55 has been found to apply in admiralty actions. *See, e.g., United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 163 (1st Cir. 2004).

Thus, in Limitation of Liability Actions, entry of Clerk's default is warranted against each party who fails to file a claim within the period

4

designated by the Court, provided that the petitioner has supplied the required notice. Entry of a Clerk's default under Rule 55(a) deems a defaulted party to admit a petitioner's well-pleaded allegations of fact. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citing *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005)). However, a defaulted party "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton*, 402 F.3d at 1278 (citation and quotations omitted).

So, notwithstanding entry of a Clerk's default, the Court may enter a default judgment under Rule 55(b) only when the pleadings sufficiently support a judgment. *Id.* In deciding a motion for default judgment, the Court should assess the pleadings by a standard "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245 (citation omitted). In other words, a court may enter a default judgment only where a pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II.    Factual Background

As alleged in his Amended Petition, Petitioner is the owner of the Vessel, which was involved in an incident on or about October 10, 2024, in Roberts Bay in Sarasota County, Florida. Am. Pet. (Doc. 10) at ¶ 10. Specifically, the Vessel

5

was dislodged from its dock during Hurricane Milton and collided with—and damaged—a neighboring dock, seawall, boat lift, and vessel. *Id.* at ¶ 14.

Seeking to minimize or eliminate his exposure for the Incident, the Petitioner filed a petition on February 5, 2025, pursuant to the Limitation of Liability Act, 46 U.S.C. § 30501, et seq., as well as Rule F of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Doc. 1. Upon initial review, the Court questioned whether the Petition satisfied the requirements of Supplemental Rule F(2). Doc. 7. In response, Petitioner filed an Amended Petition. Doc. 10.

On March 14, 2025, the Court approved the Petitioner's ad interim stipulation for value, directed the issuance of a monition instructing all potential claimants to join in this action prior to May 1, 2025, and ordered that a notice of monition be published in a newspaper of general circulation (not a niche or trade publication) in Sarasota and Hillsborough Counties once a week for four successive weeks prior to that date, and also mailed to every person or corporation known to have a claim against Petitioner arising out of the incident. Doc. 12. The Petitioner thereafter published the notice of monition in the Tampa Bay Times on April 6, April 13, April 20, and April 27, 2025, and in the Sarasota Herald-Tribune on April 2, 9, 16, and 23, 2025. Docs. 17-1, 17-2. Additionally, the Petitioner mailed the notice issued by the Court to the single known potential claimant, Dean Ricci. Doc. 17 at ¶¶ 6, 8.

The notice of monition established a May 1, 2025 deadline for all persons or corporations with claims arising from the Incident to file such claims with the Clerk of Court and to serve a copy on the Petitioner's attorneys. Doc. 14. The notice also advised that a failure to timely file a claim could result in a default. *Id.* The May 1, 2025 deadline has passed, and only one claimant, Mr. Ricci, filed a claim. Doc. 15.

Accordingly, on May 8, 2025, the Petitioner moved for the entry of a Clerk's default against all non-appearing potential claimants. Doc. 17. I granted that motion (Doc. 19), and the Clerk subsequently entered default against all non-appearing potential claimants (Doc. 20). Petitioner then moved for default judgment within the time allowed by Local Rule 1.10(c). Doc. 25.

III. **Analysis**

a. <u>Subject Matter Jurisdiction</u>

The Limitation of Liability Act does not independently confer subject matter jurisdiction on this Court. *See Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046 (11th Cir. 1989) ("[W]e conclude that appellant may not base admiralty jurisdiction solely upon the Limitation Act."). Rather, the test

7

for subject matter jurisdiction in a Limitation of Liability Act is whether the action arises under the Court's admiralty jurisdiction.[1]

Subject matter jurisdiction for an admiralty case requires that the "wrong" at the heart of the action both (1) occurred on navigable waters and (2) had a significant connection with traditional maritime activity. *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 (1982). As to the former requirement, a waterway is navigable when it is presently used, or is capable of being used, as an interstate highway for commercial trade or travel. *The Daniel Ball*, 77 U.S. 557, 563 (1870).[2] And, as to the latter requirement, it does not require that the wrong be directly connected with commercial maritime activity. *Foremost Ins.*, 457 U.S. at 674–75 ("The federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually engaged in commercial maritime activity. This interest can be fully vindicated only if all operators of vessels on navigable

---

[1] The Constitution provides that the federal judicial power "shall extend . . . to all Cases of admiralty and maritime Jurisdiction." U. S. Const., Art. III, § 2, cl. 1. Congress implemented this jurisdictional grant in what is now 28 U.S.C. § 1333(1), which provides that district courts enjoy "original jurisdiction, exclusive of the courts of the States, of[] . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

[2] Although *The Daniel Ball* was essentially a Commerce Clause case, it has been applied by many courts in deciding admiralty jurisdiction and is considered authoritative in this area of law. *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).

waters are subject to uniform rules of conduct."). Thus, the Supreme Court has found that the storage and maintenance of a boat at a marina on navigable waters is significantly connected to "traditional maritime activity." *Sisson v. Ruby*, 497 U.S. 358, 367 (1990).

This action involves the unintentional unmooring of a pleasure boat in Roberts Bay. Am. Pet. (Doc. 10) ¶¶ 10, 12. Roberts Bay is part of the Intracoastal Waterway,[3] which is a "navigable water." *See, e.g., United States v. Sasser*, 967 F.2d 993, 995 (4th Cir. 1992) ("The Intracoastal Waterway" is a "navigable water[] of the United States."); *United States v. Hollywood Marine, Inc.*, 519 F. Supp. 688, 690 (S.D. Tex. 1981) (referring to the Intracoastal Waterway as "a navigable water of the United States"). Thus, the first part of the jurisdictional test—that the incident occurred on navigable waters—is satisfied. And, the second part of the jurisdictional test—that the incident had a significant connection with traditional maritime activity—is satisfied, because the Supreme Court has held that the storage of a vessel on navigable waters bears a sufficient nexus to traditional maritime activity to sustain a district court's admiralty jurisdiction. *Sisson*, 497 U.S. at 367.

Thus, the Court has subject matter jurisdiction over this action.

---

[3] *See* NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, *Nautical Charts of the Intracoastal Waterway*, https://nauticalcharts.noaa.gov /publications/coast-pilot/files/cp5/CPB5_C12_WEB.pdf

b. <u>Proper Notice of Petition</u>

Pursuant to Supplemental Rule F(4), the Court established methods through which Petitioner was required to provide notice to all potential claimants and established a May 1, 2025 deadline to file any claims against Petitioner arising from the October 10, 2024 incident. Docs. 12, 14. Petitioner sent notice of the proceeding and deadline to the person whose property was damaged in the incident and published notice to the general public through the court-ordered procedures, and in accordance with Supplemental Rule F(4). *See* Docs. 17-1, 17-2; Doc. 17 ¶¶ 6, 8.

Rule F(5) states that all claims "shall be filed and served on or before the date specified in the notice provided for in subdivision (4) of this rule." Supp. R. F(5). Federal Rule of Civil Procedure 55(a) provides that the Clerk shall enter a default when someone against whom relief is sought fails to plead or otherwise defend the action. Fed. R. Civ. P. 55(a). Here, potential claimants were required to file claims by May 1, 2025. Only Dean Ricci filed a claim. Doc. 15. The claims period then closed.

All non-appearing claimants "failed to plead or otherwise defend" in the present action. Therefore, entry of Clerk's default under Federal Rule of Civil Procedure 55(a) was proper.

c. <u>Personal Jurisdiction</u>

Generally, a court must ensure it has personal jurisdiction over defaulting defendants.

First, the defaulting parties here are not traditional defendants, but non-appearing claimants. Under the Limitation of Liability Act, "all claims [against the petitioner] are marshaled and brought into one action—establishing a 'concursus'[4] of all claims." *Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444, 449 (4th Cir. 1999). (quoting *Md. Casualty Co. v. Cushing*, 347 U.S. 409, 414, (1954)). Thus, any claimant who seeks to argue that the petitioner in a Limitation of Liability Act action is not entitled to the protections of the Act must go to the court in which the petition was filed; this is the only court where claims may be filed. "If every potential claimant could simply argue that the court in which the limitation action was filed lacks personal jurisdiction over them, and thus they need not file claims before that Court, a concursus of claims would not be achievable and the Limitation Act would be rendered

---

[4] A concursus is "[a]n equitable proceeding in which two or more creditors claim, usually adversely to each other, an interest in a fund or estate so that they can sort out and adjudicate all the claims on the fund." CONCURSUS, Black's Law Dictionary (12th ed. 2024). The purpose of the concursus "is not to prevent a multiplicity of suits but . . . to provide a marshalling of assets—the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full." *S & E Shipping Corp. v. Chesapeake & O. Ry. Co.*, 678 F.2d 636, 642 (6th Cir. 1982) (citation omitted).

useless." *In re F/V Misty Blue, LLC*, No. CV1712773RMBAMD, 2018 WL 1837827, at *2 n.2 (D.N.J. Apr. 18, 2018).

Moreover, traditional jurisdictional Due Process concerns are not implicated here. The purpose of the Due Process Clause is to "give[] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The defaulting claimants in this action, unlike traditional defendants, are not being hailed into a foreign court to defend an action against them but rather, being afforded the opportunity to contest a petitioner's limitation of liability.[5]

Given the nature of a Limitation of Liability Act action, I need not find that the Court has personal jurisdiction over each non-appearing claimant.

---

[5] A default judgment in this context merely limits a person's right to full recovery in tort. A limitation on a common law measure of recovery does not deprive a party of a fundamental right to "life, liberty, or property" but, instead, is a "classic example of an economic regulation." *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 83 (1978) ("It is by now well established that [such] legislative Acts . . . come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." (citation omitted)).

12

d. <u>Applicability of the Limitation of Liability Act</u>

The Limitation of Liability Act applies only to "owners" of "seagoing vessels and vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters." 46 U.S.C. § 30502(a); 30529(a). Thus, both Petitioner and the Vessel must fall within those definitions.

i. Petitioner is an Owner

Limitation of Liability Act proceedings may be initiated by vessel owners. The Limitation of Liability Act defines "owner" as a "charterer that mans, supplies, and navigates a vessel at the charterer's own expense or by the charterer's own procurement." 46 U.S.C. § 30501(2). Courts have expanded the definition of owner or charterer to encompass parties in analogous situations who exercise dominion and control over a vessel and are, therefore, owners pro hac vice, even if not technically charterers. *See Dick v. United States*, 671 F.2d 724, 727 (2d Cir. 1982) (The term "owner" is to be interpreted in a "liberal way."); *Petition of the United States*, 259 F.2d 608, 609 (3d Cir. 1958) (noting that the words "charter" or "charter party" need not be present in a contract in order for the person taking over the operation of the ship to be considered a charter party or temporary owner). Rather, "one who is subjected to a shipowner's liability because of [its] exercise of dominion over a [i.e., relationship to] [the] vessel should be able to limit [its] liability to that of an owner." *In re Houseboat Starship II*, 2005 WL 3440788, at * 3 (M.D. Tenn. Dec.

13

12, 2005) (quoting *Complaint for Exoneration of or Limitation of Liability of Shell Oil Company, et al.*, 780 F. Supp. 1086 (E.D. La. 1991) (entitling both owner and "de facto operator of the vessel" to limit their liability)).

In other words, "if the petitioner may be held liable because of his ownership or control of the vessel," he is an owner for purposes of the Limitation of Liability Act. *Complaint of Chesapeake Shipping, Inc.*, 778 F. Supp. 153, 156 (S.D.N.Y. 1991); *Houseboat Starship II*, 2005 WL 3440788 at *3 ("[T]he act is designed to cover one who is a 'likely target' for liability claims" predicated on its status as the entity "perhaps ultimately responsible for the vessel's maintenance and operation."); *In re Complaint for Exoneration From or Limitation of Liability of Shell Oil Co.*, 780 F. Supp. at 1089–90 ("The rule that emerges from all of the cases interpreting ownership . . . is that if the plaintiff in limitation may be held liable because of his ownership or control of the vessel, then he can maintain a limitation action.").

Here, Petitioner pleads, "At all times material hereto, Petitioner . . . was the registered owner of the Vessel." Am. Pet. (Doc. 10) ¶ 7. Thus, I find that Petitioner is an "owner" under the meaning of the Limitation of Liability Act.

### ii.  The Act Applies to the Vessel

The Limitation of Liability Act applies to "seagoing vessels and vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters." 46 U.S.C. § 30502(a). But, beginning on December 23, 2022, the

14

Limitation of Liability Act no longer applied to "covered small passenger vessels." *Id.* § 30502(b).

The Act defines a "small passenger vessel" as "a vessel of less than 100 gross tons . . . (A) carrying more than 6 passengers, including at least one passenger for hire; (B) that is chartered with the crew provided or specified by the owner or the owner's representative and carrying more than 6 passengers; (C) that is chartered with no crew provided or specified by the owner or the owner's representative and carrying more than 12 passengers; (D) that is a submersible vessel carrying at least one passenger for hire; or (E) that is a ferry carrying more than 6 passengers." *Id.* § 2101(47). The Act defines a "covered small passenger vessel" as a "small passenger vessel" that is not a wing-in-ground craft and is carrying "not more than 49 passengers on an overnight domestic voyage; and [ ] not more than 150 passengers on any voyage that is not an overnight domestic voyage." *Id.* § 30501(1).

It is the Petitioner's burden to show, in the Petition, that the Limitation of Liability Act applies. *E.I. Du Pont De Nemours & Co. v. Bentley*, 19 F.2d 354, 354 (2d Cir. 1927) ("It must appear from the pleading itself that the petitioner is a charterer of the kind described in the statute . . . . Whether other facts might bring him within the statute we need not inquire. We must go by the pleading."); *Complaint of Chesapeake Shipping, Inc.*, 778 F. Supp. 153, 155

(S.D.N.Y. 1991) ("One seeking to invoke the limitation of liability statute bears the burden of pleading facts establishing entitlement to do so.").

The Amended Petition does not specifically include facts about the Petitioner's vessel. However, the well-pleaded facts in the Amended Petition show that the vessel was dislodged from a dock during a hurricane without anyone on board. Am. Pet (Doc. 10) ¶¶ 15, 17 (noting the only potential claimant was the owner of the property that the Vessel damaged). These allegations sufficiently demonstrate that the Vessel was not excluded from the Act as a "covered small vessel," because it (A) did not have any passengers for hire, (B) was not chartered with crew provided or specified by Petitioner, (C) was not carrying more than 12 passengers, (D) was not a submersible vessel carrying at least one passenger for hire, and (E) was not a ferry carrying more than 6 passengers. *Id.*

Because the Vessel is not a "covered small passenger vessel," I find the Limitation of Liability Act applies to the Vessel. *See* 46 U.S.C. § 30502.

### e. Limitation or Exoneration from Liability

The Limitation of Liability Act limits a vessel owner's liability for any "loss, damage, or injury by collision . . . done, occasioned, or incurred, without the privity or knowledge of the owner." 46 U.S.C. § 30523(b). Generally, in determining whether to limit a petitioner's liability, courts consider (1) whether there are any acts of negligence that caused the accident, and if so,

16

(2) whether those acts of negligence were those associated with the shipowner's vessel, and, if so, (3) whether the shipowner had knowledge or privity of those same acts of negligence. *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1306 (11th Cir. 2023) (citations omitted) (noting that, while this procedure is "typical," it need not be applied rigidly).

If the accident was not caused by negligence associated with the shipowner's vessel, then the shipowner is exonerated from all liability. *See American Dredging Co. v. Lambert*, 81 F.3d 127, 129 (11th Cir. 1996). But if negligent control of the shipowner's vessel was in any way responsible for the accident, the court must determine whether the shipowner had knowledge of, or was in privity with, the negligence. *Beiswenger Enterprises*, 86 F.3d at 1036. And "consistent with the statutory purpose to protect innocent investors, 'privity or knowledge' generally refers to the vessel owner's personal participation in, or actual knowledge of, the specific acts of negligence or conditions of unseaworthiness which caused or contributed to the accident." *Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060, 1064 (11th Cir. 1996).

Importantly, a claimant bears the initial burden of proving negligence or unseaworthiness, while the shipowner has the burden to prove the lack of privity or knowledge. *Hercules Carriers v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558, 1564 (11th Cir. 1985).

17

"When a moving ship strikes and damages a stationary object, it is presumed that the moving ship is at fault." *Bunge Corp. v. Freeport Marine Repair, Inc.*, 240 F.3d 919, 923 (11th Cir. 2001) (citing *The Louisiana*, 70 (3 Wall.) U.S. 164, 173 (1866)). This is true even when the "vessel[] [is] moving or drifting due to an external force, such as the current or the wind." *Fischer v. S/Y NERAIDA*, 508 F.3d 586, 593 (11th Cir. 2007). Nonetheless, the vessel owner can rebut the presumption of negligence when "it can show affirmatively that the drifting was the result of inevitable accident, or a *vis major*, which human skill and precaution, and a proper display of nautical skill could not have prevented." *The Louisiana*, 70 U.S. at 173. "The test for determining whether [a vessel owner] w[as] free from fault is whether [he] took reasonable precautions under the circumstances as known or reasonably to be anticipated." *Petition of the United States*, 425 F.2d 991, 995 (5th Cir. 1970). "Applied to the context of hurricane preparations, reasonable care amounts to whether the owner used all reasonable means and took proper action to guard against, prevent or mitigate the dangers posed by the hurricane." *Fischer v. S/Y NERAIDA*, 508 F.3d 586, 594 (11th Cir. 2007) (citation and quotation marks omitted).

Thus, while there is a presumption of negligence in this case, Petitioner pleads facts asserting he could have been free from negligence and from privity or knowledge with any negligent act.

18

Petitioner pleads that he "exercised due diligence to securely fasten and maintain the Vessel in a condition . . . capable of withstanding hurricane-force winds and tidal conditions." Am. Pet. (Doc. 10) ¶ 12. Specifically Petitioner, pleads that he took

> reasonable actions in preparation for the impending storm, which included securing the Vessel's bow using a combination of braided and twisted lines, with the braided line having additional slack to allow the twisted line to naturally stretch and absorb shock. The braided line served as a stop for the twisted line. The same arrangement was applied at the stern, except that after Hurricane Helene, Petitioner replaced the twisted line on the port side with a braided line to the port piling. The stern lines were crossed, meaning the starboard side was secured to the port piling, and the port side was secured to the starboard dock piling. This configuration allowed the vessel more freedom of movement and reduced strain from shorter lines. Additionally, a flexible stainless whip was placed at the stern, elevating all four stern lines to prevent them from snagging on the rub rail, boarding ladder, and dive platform. There were two spring lines: one twisted line ran from a midship dock piling to the starboard stern, while a braided line ran aft of midship to a starboard dock piling. Two days prior to Hurricane Milton, Petitioner inspected the dock lines, checked, and adjusted the chafing gear on all lines, which were properly equipped with it.

*Id.* ¶ 13. Under the facts alleged, it is plausible that Petitioner "used all reasonable means and took proper action to guard against, prevent or mitigate the dangers posed by the hurricane." *Fischer*, 508 F.3d at 594. In other words, Petitioner sufficiently pleads that he was not responsible for the accident, because he asserts facts that, if true, would demonstrate that he acted without negligence.

Because the facts pleaded in the Amended Petition rebut the presumption of negligence, entry of final default judgment exonerating Petitioner from liability against all non-appearing claimants is appropriate.

## IV.  Conclusion

Having found that the Court has jurisdiction, that Petitioners properly noticed non-appearing claimants of this action, that potential claimants failed to timely appear, and that the non-appearing claimants thus admitted by default facts that entitle Petitioner to exoneration from liability under the Limitation of Liability Act, I respectfully recommend that the Court:

1. Grant Petitioner's unopposed motion for entry of final default judgment in his favor (Doc. 25), exonerating him from liability as to all non-appearing claimants; and

2. Pursuant to Rule 58, enter a judgment against all persons and entities who have failed to file claims and/or answers by the claims deadline, and bar them from filing future claims against Petitioner Carl Koch, arising from the October 10, 2024 accident more fully described in Petitioner's Amended Complaint.

Specifically excluded from this default judgment is the appearing

claimant Dean Ricci.

**SUBMITTED** for consideration on September 12, 2025.

NATALIE HIRT ADAMS
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.